b

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

UNITED STATES OF AMERICA          CRIMINAL DOCKET NO. 1:19-CR-00367

VERSUS                            DISTRICT JUDGE DRELL

DEMETRI GOLDSMITH                 MAGISTRATE JUDGE PEREZ-MONTES

---

## REPORT AND RECOMMENDATION

Before the Court is Defendant Demetri Goldsmith's ("Goldsmith's) Motion for a Mental Competency Determination. ECF No. 39. Because the Government's expert evidence shows that Goldsmith is able to consult with his lawyer with a reasonable degree of rational understanding and otherwise assist in the defense, has a rational understanding of the criminal proceedings, and has a factual understanding of the proceedings, it is recommended that Goldsmith be found competent to proceed and stand trial.

I.    Background

Demetri Goldsmith ("Goldsmith") is charged by indictment with assaulting (with a dangerous weapon) two federal officers who are employed at the United States Bureau of Prisons at the United States Penitentiary in Pollock, Louisiana ("USP-Pollock"), pursuant to 18 U.S.C. § 111. ECF No. 1. Both officers were stabbed. Because the sentence Goldsmith was previously serving expired on November 17,

2021 (ECF No. 52), Goldsmith is currently a pretrial detainee at the United States Penitentiary in Pollock, Louisiana.[1]  ECF No. 52.

Goldsmith filed a Motion to Determine Competency.  ECF No. 39.  That motion was referred to the undersigned.[2]  ECF No. 45.  Goldsmith underwent competency and criminal responsibility exams, and a report was filed by Dr. Lisa Feldman, Ph.D., a forensic psychologist.  ECF No. 49.  The Court held a competency hearing at which Dr. Feldman testified.  ECF No. 47.

## II.  Law and Analysis

### A.  The legal standards applicable to competency determinations

A criminal defendant may not be tried unless he is competent.  *See United States v. Duhon*, 104 F. Supp. 2d 663, 669-70 (W.D. La. 2000) (citing *Cooper v.*

---

[1] Goldsmith initially entered a conditional waiver of his pretrial detention hearing because he was still serving a previously imposed sentence at the time.  ECF No. 10.  Goldsmith also waived his right to a speedy trial at that time.  ECF No. 19.  Since then, Goldsmith has finished serving his previous sentence and is currently in the custody of the United States Marshal as a pretrial detainee.  ECF Nos. 47, 52.  Goldsmith has complained to this Court about retaliation against him by BOP officers, but has not filed a *Bivens* complaint.  ECF No. 52.

[2] Although the Order of referral was for a determination of mental competency to stand trial, a determination of his sanity at the time of the offense, and whether he has a mental disease or any other mental condition that bear on the issue of guilt (ECF No. 39), Goldsmith's motion was only as to mental competency to stand trial.  The parties agreed at the competency hearing that Goldsmith had not raised, and did not intend to raise, an insanity defense, and that any evidence as to Goldsmith's sanity at the time of the offense was irrelevant to the issue before the Court.

However, in accordance with the Order, Dr. Feldman found that Goldsmith does not have a severe mental illness that would impair his ability to understand the nature and quality of the wrongfulness of his actions and that, in her opinion, he was "criminally responsible" for his behavior at the time of the alleged offense.  ECF No. 49-1 at 15.

*Oklahoma,* 517 U.S. 348, 354 (1996), and *Pate v. Robinson,* 383 U.S. 375, 378 (1966)). The criminal trial of an incompetent person violates the constitutional right to substantive due process. *See Duhon*, 104 F. Supp. 2d at 671 (citing *Medina v. California,* 505 U.S. 437, 453 (1992)).

To be competent, a defendant must be able to (1) consult with the lawyer with a reasonable degree of rational understanding; (2) otherwise assist in the defense, (3) have a rational understanding of the criminal proceedings; and (4) have a factual understanding of the proceedings. *See Duhon*, 104 F. Supp. 2d at 671 (citing *Drope v. Missouri,* 420 U.S. 162, 171 (1975); *Dusky v. United States,* 362 U.S. 402, 402 (1960). An erroneous determination of competence "threatens a 'fundamental component of our criminal justice system'—the basic fairness of the trial itself." *Cooper v. Oklahoma,* 517 U.S. 348, 364 (1996).

While 18 U.S.C. § 4241 is silent regarding the burden of proof, the Fifth Circuit has held that the government bears the burden of proof in federal prosecutions of proving the defendant's competence to stand trial by a preponderance of the evidence. *See United States v. Forrest*, 2010 WL 4626089, at *9–11 (W.D. La. 2010), *report and recommendation adopted,* 2010 WL 4622170 (W.D. La. 2010) (*citing Lowenfield v. Phelps,* 817 F.2d 285, 294 (5th Cir.1987), aff'd, 484 U.S. 231 (1988); *United States v. Makris,* 535 F.2d 899, 906 (5th Cir.1976), cert. denied, 430 U.S. 954 (1977).

**B.** <u>Goldsmith is competent to proceed and stand trial.</u>

At Goldsmith's competency hearing, Dr. Feldman testified that she is employed by the Bureau of Prisons at the Federal Detention Center in Miami, Florida. Dr. Feldman was accepted as an expert in forensic psychology, and her forensic psychological evaluation of Goldsmith was accepted into evidence. Dr. Feldman testified that her opinion was based on the documents she reviewed,[3] the psychological tests administered to Goldsmith, and her behavioral observation of Goldsmith's mental state. Goldsmith's clinical evaluation period was from January 4, 2021 through March 9, 2021.

Dr. Feldman administered: the Kaufman Brief Intelligence Test (2d ed.) ("KBIT-2") (an estimate of intelligence); the Validity Indicator Profile ("VIP") (an indicator of effort or response style); the Miller Forensic Assessment of Symptoms Test ("M-FAST") (a screening measure to determine psychiatric impairment or malingering); the Minnesota Multiphasic Personality Inventory III ("MMPI-III") (a psychiatric test that also has indicators to detect malingering); and the Georgia Court Competency test ("GCC") (which measures a defendant's actual understanding of the charges against him and the various courtroom participants and assesses whether an individual is putting forth a feigned or malingered impairment related to competency).

---

[3] Dr. Feldman reviewed a presentence investigational report, the judgment in the case that was Goldsmith's original sentence, the current indictment, and the order of evaluation.

4

Goldsmith's KBIT-2 results showed an overall intellectual functioning is in the lower extreme range, with a verbal IQ in the below average range and a nonverbal IQ in the lower extreme range. ECF No 49-1 at 11. Dr. Feldman testified that Goldsmith's verbal skills are better developed than his nonverbal skills.

The VIP indicated that Goldsmith's KBIT-2 test results are not valid because he did not put forth motivated effort on the nonverbal test (he gave inconsistent responses) and did not put forth any effort on the verbal test (he gave irrelevant responses). Dr. Feldman explained that the VIP test indicated inadequate effort from Goldsmith but did not necessarily indicate malingering. Therefore, the results of the KBIT-2 likely should have been higher than they were.

The M-FAST test showed that Goldsmith was feigning or malingering a psychiatric impairment. Dr. Feldman explained the M-FAST was given as a follow-up to the VIP.

The MMPI-III indicated that Goldsmith was indeed exaggerating his psychiatric impairment. Dr. Feldman explained that was consistent with the M-FAST and the VIP results. None of the tests indicated that Goldsmith is not competent to proceed.

Dr. Feldman testified that she found Goldsmith's mental status was relatively unremarkable and his thoughts were logical and organized, which was consistent with the test results indicating malingering. Dr. Feldman explained that even a person with a low IQ can malinger. Dr. Feldman noted that, since Goldsmith had

been incarcerated with in BOP in 2017, no psychologist has ever diagnosed Goldsmith with a serious mental disorder. Goldsmith has only been diagnosed with antisocial personality disorder.

Dr. Feldman testified that neither malingering nor antisocial personality disorder affect Goldsmith's competence to proceed in the criminal case. Although Goldsmith has previously feigned suicidal ideation, he always did it to get what he wanted, and that was a form of malingering. Dr. Feldman found that Goldsmith's attitudes and behaviors are consistent with a personality disorder comprised of antisocial beliefs that impedes his ability to conform to social norms, and that he is manipulative and demanding towards others. ECF No. 49-1 at 12. Dr. Goldsmith stated that Goldsmith had previously been diagnosed with antisocial personality disorder and explained that the presence of antisocial personality disorder is one of the criteria that is believed to be linked to malingering.

Dr. Feldman further testified she had not seen any medical records to corroborate Goldsmith's statement that he has an extensive mental health history prior to his arrival at the BOP in 2017. Dr. Goldsmith also testified that an antisocial personality disorder has nothing to do with one's inability to consistently seek mental health treatment, and that there is no medication that can treat an antisocial personality disorder.

Dr. Feldman classified Goldsmith as malingering and diagnosed him with antisocial personality disorder.[4] ECF No. 49-1 at 12.

Dr. Feldman found that Goldsmith's mental state is relatively stable, there is no evidence of an active phase of a serious mental illness, and his psychiatric prognosis is favorable.  ECF No. 49-1 at 13.  Dr. Feldman further found that Goldsmith understood the charge against him and the roles of the courtroom personnel, has a satisfactory level of legal knowledge, and has the capacity to assist in his own defense. ECF No. 49-1 at 14.  Dr. Feldman recommended that Goldsmith be found competent to proceed with his criminal trial.

Defense counsel argues that Goldsmith has consistently demonstrated "a pattern of disordered thinking in response to what he perceives to be slights against him," which is a trait of antisocial personality disorder that prevents Goldsmith from cooperating with his attorney and assist in his defense.  Goldsmith contends he is struggling with "a deficit in his neuropsychology that makes him unable to meaningfully engage interpersonally" with defense counsel, and that he is mentally incapable of working in a team environment until he is rehabilitated.

---

[4] Dr. Feldman explained that Goldsmith has a longstanding pattern of characterological behaviors and perceptions that are consistent with a permanent disorder–a pattern of failing to conform to social norms, irresponsibility, poor judgment, substance abuse, unlawful activities since age 9, disregard for authority, and problems following rules during his incarceration.  Dr. Feldman stated that Goldsmith volitionally chooses to engage in inappropriate behavior.

Defendant did not present any evidence to support his claim that he is unable to assist in his defense due to a mental disease. Dr. Feldman found otherwise, so the only direct evidence before the Court shows that Goldsmith is competent to stand trial. Although Goldsmith may be difficult to work with, even concerningly so, in the past he has often shown himself to be goal-oriented. Goldsmith has a record of using bad behavior and suicide threats to achieve what he wants (usually some change in his housing environment). Therefore, even background and circumstantial evidence indicate that Goldsmith can cooperate with his counsel and assist in his defense if he chooses to do so.

Because, the Government has shown by a preponderance of the evidence that Goldsmith is able to consult with his lawyer with a reasonable degree of rational understanding and otherwise assist in the defense, has a rational understanding of the criminal proceedings, and has a factual understanding of the proceedings, Goldsmith should be found competent to stand trial.

## III.  <u>Conclusion</u>

Based on the foregoing, IT IS RECOMMENDED that Goldsmith be found competent to stand trial.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), parties aggrieved by this Report and Recommendation have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections

within fourteen (14) days after being served with a copy thereof.  No other briefs (such as supplemental objections, reply briefs, etc.) may be filed.  Providing a courtesy copy of the objection to the undersigned is neither required nor encouraged. Timely objections will be considered by the District Judge before a final ruling.

Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

THUS DONE AND SIGNED in chambers in Alexandria, Louisiana, this __30th__ day of November, 2022.

Joseph H.L. Perez-Montes
United States Magistrate Judge